# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOSEPH MICHALKIEWICZ,**

        **Petitioner,**

        **v.**                              **Case No. 07-C-909**

**CATHY JESS,**

        **Respondent.**

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Joseph Michalkiewicz ("Michalkiewicz") is in custody pursuant to a state court judgment and on October 10, 2007, he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. On October 18, 2007, the Honorable William Griesbach screened Michalkiewicz's petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and dismissed his claim relating to the delay in bringing charges against him and his argument that his conviction should be reversed in the interests of justice. The respondent was ordered to answer the petition as to Michalkiewicz's remaining grounds for relief. On November 13, 2007, the respondent answered, and on November 14, 2007, this case was transferred to this court upon all parties consenting to the full jurisdiction of a magistrate judge. The pleadings on Michalkiewicz's petition are closed and the matter is ready for resolution.

**FACTS**

On April 14, 2003, Michalkiewicz was convicted of one count of first-degree intentional homicide with the use of a dangerous weapon, in violation of Wisconsin Statutes §§ 939.63(1)(b) and 940.01(1). (Ans. Ex. A.) Michalkiewicz appealed his conviction, and on February 1, 2006, the

court of appeals affirmed his conviction in an unpublished per curiam decision. (Ans. Ex. B.) On April 10, 2006, the Wisconsin Supreme Court denied review, (Ans. Ex. F), and on April 17, 2006 denied Michalkiewicz's request for reconsideration of its denial of review, (Ans. Ex. G). The United States Supreme Court denied review on October 16, 2006.

The following relevant facts are contained in the court of appeals decision:

Michalkiewicz was convicted of the murder of George Moore. Moore was killed on February 9, 1979, in a Clark gas station where he worked. He was found by two police officers who noticed that a trash barrel had been thrown through the window of the station. While investigating the crime scene, one of the officers noticed bloody shoeprints on the pavement—one near the door and one near the gas pumps. These prints had an arrow design on them. About $1100 in cash, mostly in one dollar bills, had been stolen from the station.

Police investigators made inquires and were told that Michalkiewicz and another man had been in the area the night of the murder. When the police interviewed Michalkiewicz, he initially told him that he had been out drinking but had not been near the gas station that night. When the police left his house, however, they noticed shoeprints similar to those found at the gas station. Michalkiewicz allowed the police to take his shoes for comparison. Shortly afterwards, Michalkiewicz called the police and asked for another interview. He then told the police that he had gone to the gas station that night to use the restroom. He said that while he was in the restroom, he heard noises and Moore's screaming voice. He said when he went inside the station to investigate, he saw Moore's body on the floor and a black man standing over it. The man then chased him away.

In a subsequent statement, he also said that he had seen a two-toned car in the gas station parking lot. He said that when he went into the room where Moore's body was lying, the man standing over Moore threw a bottle down at Moore. The man then chased Michalkiewicz out of the station, and he hid as the man drove away. He told the police that he had initially lied because the man standing over Moore's body had seen him and he was afraid of retaliation. Michalkiewicz was not able to identify the man from any of the photos of possible suspects. Many witnesses gave information to the police about people who may have committed the murder, as well as sightings of a two-toned car in the area around the time of the murder. Some of these were confidential informants and, by the time of Michalkiewicz's trial, the police no longer knew their identities.

At the time of the homicide, the police searched Michalkiewicz's home, but did not find any of the money. An examination of the clothes Michalkiewicz was wearing that night revealed human blood stains. At that time, the police were not able to identify the blood as Moore's. The State conducted DNA testing on the clothing in

1999 and 2001 and established that Moore's DNA was in the blood found on Michalkiewicz's pants.

(Ans. Ex. B at ¶¶2-5.)

**STANDARDS OF REVIEW**

Where the state court adjudicates the merits of a petitioner's claim, this court may grant habeas corpus relief if the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in Williams v. Taylor, § 2254(d)(1) establishes two independent grounds on which a federal court can grant habeas corpus relief: (1) if a state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court, or (2) if a state court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court. 529 U.S. 362, 404-05 (2000); see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir.2000). The "contrary to" standard requires a state court decision to be "substantially different from the relevant precedent of [the Supreme Court]." Williams, 529 U.S. at 405. For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result. Id. at 405-06. By contrast, a state court decision that draws from Supreme Court precedent the correct legal rule and applies it in a factually distinguishable situation will not satisfy the "contrary to" standard, no matter how misguided the decision's ultimate conclusion. Id. at 406-07.

Under the "unreasonable application" prong of (d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case. Williams, 529 U.S. at 404. An unreasonable application of federal law, however, is different from the incorrect or erroneous application of federal law. Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (citing Williams, 529 U.S. at 410). A federal court simply disagreeing with the state court decision does not warrant habeas relief-the decision's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Under § 2254(d)(2), relief may be had where the petitioner demonstrates that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Here again, an unreasonable determination is more than a determination that is simply incorrect or erroneous. Moreover, state court factual determinations are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing evidence." § 2254(e)(1). Rice v. Collins, 546 U.S. 333, 339 (2006) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)).

**ANALYSIS**

Michalkiewicz presents two remaining grounds for relief: (1) the government's failure to preserve evidence relating to confidential informants deprived him of exculpatory evidence at trial; and (2) the trial court erred in admitting the informant's hearsay statements only for the limited purpose of corroborating Michalkiewicz's own statements, but not for the truth of the matter asserted. The court shall address each of these in turn.

The police do not have an "undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Ariz. v. Youngblood, 488 U.S. 51, 58 (1988). "[T]herefore, . . . unless a criminal defendant can show bad

faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. However, if evidence is apparently exculpatory, rather than merely potentially useful, the good faith analysis is irrelevant; a due process violation occurs whenever apparently exculpatory evidence is withheld for a defendant. Illinois v. Fisher, 540 U.S. 544, 548-49 (2004).

With respect to the majority of Michalkiewicz's claims regarding the identities of informants, he did not argue to the court of appeals that the police acted in bad faith when they were unable to locate the identities of the informants more than twenty-years after the crime occurred, (see Ans. Ex. B ¶9), and likewise Michalkiewicz does not make that argument here. Thus, the court of appeals held that because the identities of most informants were merely potentially useful rather than apparently exculpatory, Michalkiewicz was not entitled to relief. (Ans. Ex. B at ¶¶8-9.) This court finds no error in the court of appeals' decision that nearly all of the informants were merely potentially useful, and thus Michalkiewicz's failure to demonstrate bad faith on the part of the state is fatal to his claim.

However, the court of appeals recognized, and the state conceded, there was a distinction with respect to one informant who stated that two others had told the informant they had committed the murder, and thus this statement was apparently exculpatory. (Ans. Ex. B at ¶10.) Michalkiewicz argues in his petition that these additional informant statements were apparently exculpatory. (Pet. at 15-20.) The court has reviewed the police reports regarding the informants' statements, included as part of Exhibit C to the Answer, and concludes that only one of the informants' statements was apparently exculpatory. These reports contain the following relevant information:

> An informant advised the investigators that he saw two Mexican males driving an older Lincoln Continental in a very reckless and fast manner in the area of the murder at about 1:30 AM to 1:40 AM on the date of the murder.

-5-
Case 1:07-cv-00909-AEG   Filed 02/27/08   Page 5 of 10   Document 15

A police detective advised the investigators that Duane Cooper and Maurice Davis drive a cream over brown Buick Riviera.

A police officer observed a compact light-colored vehicle leave the scene of the murder at 2:15 AM.

An informant told investigators that James Oliver and Dwayne Cooper were responsible for the murder. This informant was later re-interviewed and said that he could provide the police with the blood soaked shirt and jacket that was worn by the murderer. He further said that he could provide an unidentified male and female who would testify that Oliver and Cooper were involved in the murder. In exchange, the informant said that the police would have to give the female a portion of the reward money and drop several felony charges against the male. The police agreed to this proposed deal, contingent upon the blood being identified as the victim's, the witnesses passed polygraph examinations, and the witnesses were not involved in the murder. Arrangements were made for the informant to produce the bloody clothes but the informant did not show up and was not heard from. The reports do not indicate the source of this informant's alleged knowledge.

An informant told investigators that he learned from James Oliver and Dwayne Cooper that they planned to commit a burglary but were surprised by the victim who happened to be inside and thus struggled with the victim and ended up murdering him. Oliver sustained scratches in his struggle with the victim.

An informant told investigators he was with Oliver and Cooper and the day of the murder but left them at about 2:30 AM. He said Oliver and Cooper were in a beige over green Chevrolet, which he saw drive nearby his house about 30 to 45 minutes later. He later met up with Oliver and Cooper between 6 and 6:30 AM and observed Oliver and Cooper with about 50 $1 bills. This informant learned from a drug dealer that Oliver and Cooper had spent several hundred dollars, all in $1 bills. When the informant left Oliver and Cooper the night before, the pair had no money. The informant also stated that he never saw Oliver and Cooper again wear the clothes they had been wearing the day of the murder. He said that Oliver had a coat that he was particularly fond of that the informant did not believe he would get rid of unless he absolutely had to.

An informant reported that he observed an older cream over brown car in the area of the murder at approximately 1:30 AM with at least two occupants who were sitting and smoking.

The court of appeals held that only the only information that was apparently exculpatory was that from the informant who indicated that Oliver and Cooper told him they committed the

robbery. The court agrees with the court of appeals that the remaining informant statements were merely potentially useful, particularly in light of the fact that the two other informants who implicate Oliver and Cooper in the murder did not indicate the source of their information. Additionally, the fact that one informant was obviously attempting to negotiate a substantial benefit in exchange for his statement implicating Oliver and Cooper renders suspect the value of this information. The exculpatory value of this informant's information is further diminished by the fact that he failed to follow through on his agreement to produce the allegedly incriminating clothes. Thus, this court finds that the court of appeals did not err when it held that only one of the informant's statements was apparently exculpatory.

The court of appeals then went on to hold that Michalkiewicz was not entitled to relief on this claim because this additional information did not undermine the court's confidence in the outcome of the trial in light of the weight of the evidence against Michalkiewicz. (Ans. Ex. B at ¶11.)

When a defendant is denied apparently exculpatory information, "[t]he reversal of a conviction is required upon a 'showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Youngblood v. West Virginia, 547 U.S. 867 (2006) (quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995)).

The court of appeals summarized the strength of the prosecution's case against Michalkiewicz as follows:

> He did not dispute that he was in the gas station the night of the murder. Further, the recently performed DNA tests established that Moore's blood was on Michalkiewicz's clothes. Michalkiewicz offered an innocent explanation for the blood, but this story was not supported by the evidence. Further, Michalkiewicz initially lied to the police about whether he had been at the station that night. Michalkiewicz also described Moore as a good friend, yet according to his story left him lying there battered and bleeding, without calling for assistance. Michalkiewicz said that he entered the station through a large plate glass window that had been broken with a barrel. When the police arrived at the scene, however, they found the

> barrel still stuck in the window and the front door to the station unlocked. In addition, Michalkiewicz did not have a good explanation for the blood on his clothing.

(Ans. Ex. B at ¶11.)

In light of the strength of the evidence against Michalkiewicz, this court is unable to say that the additional evidence undermines confidence in the jury's verdict. Thus, this court cannot say the decision of the court of appeals was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Therefore, the court must deny Michalkiewicz's petition as to this claim.

Turning to Michalkiewicz's remaining claim that his constitutional right to present a defense was violated when the trial court admitted the informant's hearsay statements only for the limited purpose of corroborating Michalkiewicz's own statements but not for the truth of the matter asserted, this court finds that Michalkiewicz is not entitled to relief on this claim.

> The court of appeals resolved this claim by stating:
>
> The trial court allowed the jury to hear the statements but not to consider them for the truth of the matter asserted. Instead, the court allowed the jury to consider these statements as evidence that might corroborate Michalkiewicz's statements to the police. We again agree with the State that Michalkiewicz's right to due process was not violated when the court refused to admit these statements as substantive evidence.
>
> The circuit court declined to admit these statements for the truth of the matter asserted because it concluded that the statements lacked sufficient indicia of trustworthiness. The court found that the statements were troublesome because the identities of the speakers were not known. Michalkiewicz does not challenge the court's decision that these statements were inadmissible hearsay, but rather argues that the court's decision violated his right to present a defense.
>
> "[T]he test for whether the exclusion of evidence violates the right to present a defense has been stated as an inquiry into whether the proffered evidence was 'essential to' the defense, and whether without the proffered evidence, the defendant had 'no reasonable means of defending his case.'" State v. Williams, 2002 WI 58,

> ¶70, 253 Wis. 2d 99, 644 N.W.2d 919 (citation omitted). In this case, the court's decision to exclude the evidence for the truth of the matter asserted, did not leave Michalkiewicz without any reasonable means to present his defense. The jury actually heard the statements because they were allowed in to corroborate Michalkiewicz's statements to the police. In addition, these statements corroborated Michalkiewicz's own statements: the limitation on their use did not impair his ability to present his defense. Moreover, even it was error for the court to limit the use of these statements, given the evidence against Michalkiewicz and the inconsistencies in his story, we conclude that such an error was harmless for the same reasons we concluded that the evidence was not material.

(Ans. Ex. B at ¶¶12-14.)

The court finds no constitutional error in the trial court's refusal to admit the informant's statements for the truth of the matters asserted. It is clear that the statements were hearsay and there is no indication that the statements fell within any exception to the hearsay rule recognized under Wisconsin law. A court may exclude hearsay statements without violating a defendant's right to present a defense. See, e.g., Chambers v. Miss., 410 U.S. 284, 299 (1973).

The relevant jury instruction is included in the records as an attachment to Michalkiewicz's initial brief to the court of appeals. (Ans. Ex. C.) By permitting Michalkiewicz to admit the statements, but instructing the jury that it should consider these statements only to the extent that they corroborate the defendant's statements to police, the court finds that the trial court reached an appropriate resolution to the unique problem presented in this case. The court further instructed the jury that it could consider the state's failure to preserve the identities of the informants in determining whether the state has proven its case beyond a reasonable doubt. The trial court's decision to admit the hearsay statements for the limited purpose of corroborating Michalkiewicz's statements, rather for the truth of the matters asserted, was not contrary to nor involved an unreasonable application of any clearly established federal law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding. Therefore, Michalkiewicz is not entitled to relief on this ground. Thus, this court must deny Michalkiewicz's petition.

**IT IS THEREFORE ORDERED** that Michalkiewicz's petition for a writ of habeas corpus is **denied**. The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 27th day of February, 2008.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge